No. 86-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

KENNETH A. FRIEDMAN,

        Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        O'Brien & Conrad; James P. O'Brien, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Robert F.W. Smith, Asst. Atty. General, Helena
        Robert Deschamps, III, County Attorney, Missoula,
        Montana

Submitted on Briefs: Dec. 31, 1986

Decided: February 19, 1987

Filed: FEB 19 1987

_Ethel M. Harrison_

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant Kenneth Friedman appeals the May 8, 1986, order of the Fourth Judicial District Court reinstating his original forty year sentence. We affirm.

In 1982, defendant was convicted on two counts of sexual intercourse without consent and one count of aggravated assault. Defendant was sentenced to a term of 40 years in the Montana State Prison with a dangerous designation. The sentence review board modified the sentence to 40 years with 20 years suspended provided defendant successfully completed a sex treatment program in Florida.

Defendant entered the Florida sex treatment clinic on July 11, 1983. A clinic report filed January 10, 1984, noted that defendant's response to treatment had been poor and the prognosis for change by defendant was poor. A subsequent report filed April 10, 1984, recommended defendant be returned to Montana as he was not amenable to treatment and remained a danger to others. On May 25, 1984, defendant's progress was reviewed by the clinic's case review team which found defendant had a characterological disorder which prevented constructive personality growth. The team concluded defendant had shown no progress and should be dismissed from the program as further treatment efforts would be futile.

Defendant was discharged from the clinic June 1, 1984, and returned to the Montana State Prison. On January 18, 1985, defendant was informed that his original 40 year sentence was reimposed for failure to successfully complete the Florida treatment program. Defendant filed a civil rights action against prison officials in federal court, and also filed at least two petitions for writ of habeas corpus with this Court.

2

On August 5, 1985, the Missoula Deputy County Attorney filed a petition in District Court for revocation of the probationary portion of defendant's sentence. On October 24, 1985, this Court entered an order directing that an evidentiary hearing be held in District Court concerning possible revocation of the suspended portion of defendant's sentence for failure to complete the Florida treatment program.

Hearings were held on the 4th, 18th, and 25th of November, 1985, and December 23, 1985. Dr. Ted Shaw, director of the treatment program, testified that he took a special interest in defendant's case as it was unusual for a Jewish person to be involved in a sex offender program. Dr. Shaw is also Jewish and was unable to perceive any discrimination against defendant. Dr. Shaw further testified that the consensus of the staff was that defendant did not attempt to participate in his treatment, that complaints had been received from Montana about defendant contacting his victims, and that he considered defendant to be extremely dangerous.

Jonah Young, a social worker in the treatment program, testified that staff members disliked defendant and gave him little chance to succeed in the program. Mr. Young further testified that defendant was considered to be dishonest by other patients because he constantly complained that erroneous information was in his file. Mr. Young believed that defendant was working hard at following the treatment program but had no chance to succeed due to the staff's mistrust and open dislike for him.

Dr. Mark Mozer, a clinical psychologist who evaluated defendant at Deer Lodge both prior to and subsequent to defendant's involvement in the program, testified that defendant showed improvement following his discharge from the

program. Dr. Mozer believed defendant was taking more responsibility for his conduct and rationalizing his crimes less than previously.

Reports from the Florida clinic were introduced into evidence and the District Court took the matter under consideration. On May 8, 1986, the District Court entered its order reinstating defendant's original sentence of 40 years with a dangerous designation. Defendant appeals the order and raises five issues which are fully addressed by the following:

1) Whether defendant's due process rights were violated?

2) Whether the District Court determination to revoke the probationary portion of defendant's sentence is supported by substantial evidence?

Defendant contends the State violated his due process rights by failing to abide by the procedures set forth for parole and probation revocation in Morrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2539, 33 L.Ed.2d 484, and Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. Specifically, defendant asserts his right to the following was violated: 1) an on-site hearing to determine whether probable cause exists to believe conditions of parole have been violated; 2) a two step hearing process including a subsequent final revocation hearing; 3) a final revocation hearing held within a reasonable time.

Defendant has at all times remained incarcerated which distinguishes this case from Morrissey and Gagnon. Defendant had substantial time remaining to be served in the Montana State Prison after his discharge from the Florida clinic, regardless of the outcome of the probation revocation proceedings. Defendant's immediate liberty interest was not at stake and therefore no on-site preliminary hearing was

4

necessary. This Court has previously held no preliminary hearing is necessary before commencement of parole or probation revocation proceedings where detention is not involved. Petition of Meidinger (1975), 168 Mont. 7, 539 P.2d 1185.

Having determined that no preliminary hearing was necessary, we proceed to consider whether defendant had a right to a final revocation hearing within a reasonable time. The record shows defendant was discharged from the Florida clinic June 1, 1984, and the final revocation hearing commenced November 4, 1985. There is no evidence that defendant requested a speedy hearing.

The right to a speedy trial is guaranteed only in criminal prosecutions and is not applicable in revocation of probation proceedings. State v. Oppelt (1979), 184 Mont. 48, 601 P.2d 394. Sections 46-23-1013 and 46-23-1024, MCA, provide a right to a hearing within a reasonable time after a defendant is arrested for violation of probation or parole. These statutes are not applicable here for defendant's violation of the conditions of probation occurred during his incarceration.

Defendant contends the delay in holding the revocation hearing caused him substantial prejudice. Contrary to defendant's assertions, the hearing transcript reveals the clinicians had excellent recall concerning defendant's stay at the clinic. Further, much of the evidence submitted consisted of reports drawn during defendant's stay at the clinic. We find the delay in holding the revocation hearing caused no prejudice to defendant.

Morrissey, supra, and Gagnon, supra, held that the minimum due process requirements for final parole or probation revocation hearings include: a) written notice of the claimed violations of parole or probation; b) disclosure

5

to the parolee or probationer of evidence against him; c) opportunity to be heard in person and to present witnesses and documentary evidence; d) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation); e) a neutral and detached hearing body; and f) a written statement by the factfinders as to evidence relied on and the reasons for revoking probation or parole. Morrissey, 408 U.S. 489, 92 S.Ct. 2604, 33 L.Ed.2d 499, Gagnon, 411 U.S. 786, 93 S.Ct. 1762, 36 L.Ed.2d 664.

In Petition of Meidinger, supra, this Court found these requirements were not inflexible, especially where the original sentencing judge revokes probation. 168 Mont. 13, 539 Mont. 1189. However, in the present case, all of the above requirements were met, plus defendant was assisted by court appointed counsel. Defendant's due process rights have not been violated in any manner.

The next issue is whether there is substantial evidence supporting the District Court determination to revoke the probationary portion of defendant's sentence. We find that there is.

Dr. Shaw, director of the Florida clinic, testified that defendant was discharged early due to his bad attitude, dangerousness, and contacting one of his victims by telephone. This testimony was confirmed in a report by defendant's personal therapist, Albert Haskell. Defendant points to a report by Dr. Rodney Poetter which states defendant is amenable to treatment. Defendant conveniently overlooks one of Dr. Poetter's conclusions that "at worst, [defendant] is an extremely cunning and bright psychopath who is concerned simply with manipulating the system so that he can 'beat the rap' and avoid further incarceration in a standard prison environment."

6

Defendant contends he was the victim of circumstances and that due to the staff's extreme dislike of him he had no chance to succeed in the program. Jonah Young and defendant's mother testified similarly. Even given this evidence, there is substantial evidence supporting a conclusion that defendant's behavior and attitude were responsible for his failure in the program.

Defendant argues the District Court failed to make a specific finding that he was not a victim of circumstances as required by this Court's order dated October 24, 1985. A reading of the transcript and the District Court order revoking probation make it clear this issue was thoroughly treated. The District Court chose to place the greatest weight on the testimony of Dr. Shaw, who had the most expertise in the area of treatment of sexual offenders and was involved in the staff decisions concerning defendant. Dr. Shaw testified that defendant's being Jewish and from Montana had no bearing on defendant's failure in the program.

This Court's order dated October 24, 1985, required the District Court to determine whether defendant failed to complete the conditions of the modified sentence thereby justifying revocation. We find the District Court sufficiently examined the circumstances surrounding defendant's failure in the program and there is substantial evidence supporting the revocation of the probationary portion of defendant's sentence.

Defendant's final contention is that the final hearing was premature because he should be allowed to enter another sex treatment program. In this Court's order dated June 5, 1986, we specifically stated defendant had one opportunity to meet the sentence conditions. Defendant has failed and is not entitled to another treatment program as a matter of right.

7

The District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8